# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| ZACHARY KILLION | CIVIL ACTION NO. 05-2145 |
| VS. | SECTION P |
| OUACHITA CORRECTIONAL CENTER | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Zachary Killion on December 12, 2005. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the J.B. Evans Correctional Center (JBECC), Newellton, Louisiana, but he complains that he was denied prompt and adequate medical treatment for an injury he sustained when he was a pre-trial detainee at the Ouachita Correctional Center (OCC) in Monroe, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED** and **DENIED** as frivolous and for failing to state a claim for which relief may be granted.

## STATEMENT OF THE CASE

On May 9, 2005, plaintiff was a pre-trial detainee incarcerated at the Ouachita Correctional Center, Monroe, Louisiana. On that day he fell out of his bunk. He claims that he sustained a concussion and serious injury to his head, neck, and back.

1

Plaintiff claims to have no recollection of the events which occurred after his fall. He remembers awakening sometime later in "the little rubber room." He claims that for a period of 2-3 days following the incident he remained in this room and was not provided a medical examination.

Plaintiff claims that after his Administrative Remedies Procedure (ARP) grievance had been rejected three times, he was examined by Nurse Nancy Carter. According to Nurse Carter, plaintiff fell a second time and injured his head. (Plaintiff apparently had no independent recollection of this event.)

Plaintiff spoke to a fellow inmate who advised him that after his fall, a deputy placed plaintiff in a "choke hold" while the other sprayed mace in plaintiff's face. After that, according to the inmate, the deputies "rolled" plaintiff into the padded "lock-down" cell.

Plaintiff claims that he requested transfer from the lock-down cell and requested a trustee job even though he was in pain.

Plaintiff made several later sick calls and was apparently examined by a nurse on each occasion; however, "...the nurses paid attention about every complaint except [the] injuries from [plaintiff's] fall." Plaintiff advised one of the nurses that he had bad kidneys but she disagreed with that diagnosis even after plaintiff was tested.

Plaintiff requested a trustee job from the chaplain. The deputies told the chaplain that plaintiff had been involved in a fight with some deputies. Plaintiff claims to have no recollection of that incident.

On some unspecified date plaintiff was transferred to the JBECC. Plaintiff claims he attempted to work in that facility's kitchen but "...headaches, dizzy spells, neck pain, spinal and

back injuries..." prohibited him from working. He claims to still be in pain and further, he claims that he is experiencing numbness in the left side of his body.

Plaintiff has been examined by a nurse and physician at JBECC, but they provide only "pain pills" which plaintiff claims are ineffective.

On May 19, 2005, plaintiff submitted an ARP Grievance stating:

> "I woke up 3 days after ... 5/9/05 in a padded cell in a fish net suite [sic] in a cell by my self with a terrible headache and dizzy and had no idea how I got there until they finally let me come back to my cell and every body to[ld] me that I fell from the top bunk which I was assigned and that is all that I remember. I have been feeling dizzy and weak and having ... terrible headaches since then. I haven't seen a doctor seriously about this problem. It really scares me daily to feel faint and week unsure about this head injury."
> [Doc. 1-1, p. 8]

On May 20, 2005, an OCC shift supervisor responded to the ARP and advised plaintiff that he was examined by the OCC medical department who concluded that plaintiff's vital signs ("v/s") were within normal limits. The officer also advised plaintiff that there was no loss of consciousness associated with his fall and that plaintiff was able to walk without difficulty. Plaintiff was advised that he should execute a sick call request to see a physician. Plaintiff rejected this answer. [*id*.]

Plaintiff's second step appeal was answered by a Lieutenant who on May 24, 2005, advised,

> "If you think you have a problem fill out a sick call request and see the Doctor Thursday. Medical states that they cannot find anything wrong with you." Plaintiff rejected this response and appealed. On May 25, 2005, the Assistant Warden responded, "Mr. Killion you will need to fill out a sick call request and see the doctor. Your were seen by the Medical Dr. 5/25/05. Nothing further!!"
> [Doc. 1-1, p. 7]

Plaintiff named a single defendant, OCC, and prayed for compensatory and punitive damages totaling $60,000 "...for the gross neglect of the defendants..."

On March 9, 2006, the undersigned completed an initial review of the complaint and ordered plaintiff to amend the complaint to provide certain specific information. Among other things, plaintiff was advised that OCC was not a juridical person and therefore not subject to being sued. He was therefore ordered to amend his complaint to provide the names of the persons responsible for his damages. [Doc. 7]

On March 20 and 22, 2006, and again on April 5, 2006, plaintiff submitted letters in response to that order. [Docs. 8, 9, and 10]

In his letter received on March 20th, plaintiff stated, "I gave all the information I could, considering it always seemed to me like I was dead during everything that happened. I don't even remember seeing Nurse Nancy Carter the day that every [sic] happened. If she hadn't told me about my second fall, I wouldn't have known about it. If I walked without anyone helping me, I know nothing about it ... I could have died in that little cell. I don't know how long I was out before I woke up. I couldn't function properly for sometime after that incident ... They were wrong for what they did to me and even though I can't remember, I have the one true witness and that is God ... I really think that I am suffering because of what they didn't do ... What could I do sue Nurse Nancy Carter or Nurse Spillman. Nurse Spillman is the one who told me that I had a bad kidney. I didn't tell them that I had bad kidneys..." [Doc. 8]

In the letter received on March 22, plaintiff wrote, "... All I know is the truth about what happened and there is nothing frivolous or trifling about it. God knows the truth and so do

they..." [Doc. 9]

Finally, in the letter received on April 5, plaintiff stated, that he still had no recollection of the events and was relying on information told to him by inmates. [Doc. 10]

## **LAW AND ANALYSIS**

### 1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given

broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint was deficient; however, plaintiff was afforded the opportunity to amend his complaint to cure the noted defects. His amended complaints provided none of the information requested.

Accepting all of plaintiff's allegations as true, the undesigned concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted.

## 2. Juridical Persons

Plaintiff has named the Ouachita Corrections Center as his only defendant. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether OCC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.

OCC is apparently a parish corrections facility operated by the Sheriff of Ouachita Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, *Langley v. City of*

*Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)]

Further, to the extent that plaintiff's complaint is with the Ouachita Parish Sheriff's Office, it is also subject to dismissal. In Louisiana the Parish Sheriff's Offices are not legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988).

In other words, the State of Louisiana has not granted juridical status to either the Sheriff's Office or to the penal institutions administered by the Sheriff.

Plaintiff's suit against this non-juridical entity is patently frivolous. He was given the opportunity to amend his complaint and to provide the names of appropriate defendants. He did not, and therefore his complaint should be dismissed.

### 3. Medical Care

As shown above, plaintiff was asked to amend his complaint to provide the names of the persons responsible for his claimed injuries. His response, read liberally, does not comply with the order. The undersigned notes that in his letter received on March 20, plaintiff made the following cryptic statement: "What could I do sue Nurse Nancy Carter or Nurse Spillman." The undersigned does not interpret this statement as an amendment naming Carter and Spillman as defendants.

Nevertheless, to the extent that plaintiff may now seek to visit liability upon Nurses

Carter and Spillman, such a complaint fails to state a claim for which relief may be granted. Read liberally, plaintiff suggests that these defendants denied him adequate medical care while he was a pre-trial detainee at the OCC.

The constitutional right of a pre-trial detainee to medical care is based upon the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000). That right is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. *Id.* Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.* The same test is applied under an Eighth Amendment analysis appropriate to the resolution of a convict's medical care claim. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

Thus, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were <u>deliberately indifferent</u> to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not made such a showing.

"[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105

8

F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Notwithstanding the fact that he was given the opportunity to provide additional information in support of his claims, plaintiff has not alleged facts sufficient to establish deliberate indifference and therefore, to the extent that he may seek to hold the OCC nurses responsible for his injury, he has failed to state a claim for which relief may be given and dismissal on that basis is also recommended.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted all in accordance with the provisions of 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) and (2).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See**

*Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 11th day of April, 2006.

```
                            _____
                            KAREN L. HAYES
                            U. S. MAGISTRATE JUDGE
```